1

2

3

4

5                          **UNITED STATES DISTRICT COURT**

6                              **DISTRICT OF NEVADA**

7

8   LaQUAN PHILLIPS,                        )

9                          Plaintiff,       )      Case No.  2:10-cv-02068-GMN-GWF
                                            )
10  vs.                                     )      **ORDER**
                                            )
11  CLARK COUNTY SCHOOL DISTRICT;           )      **Motions to Compel - #39, #55**
    *et al.*,                               )
12                                          )
                         Defendant.         )
13  _____)

14          This matter is before the Court on Plaintiff's Motion to Compel Responsive Answers to

15  Plaintiff's Written Discovery and Request for Leave of Court to Propound Additional

16  Interrogatories to Defendant National Union Fire Insurance Company (#39), filed on November 17,

17  2011; Defendant's Opposition to the Motion to Compel (#54), filed on December 12, 2011; and

18  Plaintiff's Reply to Defendant's Opposition to Motion to Compel (#59), filed on December 23,

19  2011.

20          Also before the Court is Plaintiff's Second Motion to Compel Responsive Answers to

21  Plaintiff's Written Discovery and Request for Leave of Court to Propound Additional

22  Interrogatories to Defendant National Union Fire Insurance Company (#55), filed on December 15,

23  2011; Defendant's Opposition to Plaintiff's Second Motion to Compel (#58), filed on December

24  23, 2011; and Plaintiff's Reply to Defendant's Opposition to Plaintiff's Second Motion to Compel

25  (#60), filed on December 28, 2011.  The Court conducted a hearing on these motions on December

26  29, 2011.

27  . . .

28  . . .

# BACKGROUND

This case involves claims for breach of contract, violation of the Nevada Unfair Claims Practices Act, NRS 686A.310(2), breach of the covenant of good faith and fair dealing, and unconscionability arising out of Defendant National Union Fire Insurance Company's ("National Union") denial of Plaintiff's claim for a $500,000.00 "Catastrophe Cash Benefit" under a rider to a "Blanket Accident Insurance Policy" issued to the Clark County School District.

On September 5, 2008, Plaintiff LaQuan Phillips suffered a fracture of his cervical spine and resulting spinal cord damage while playing football for Centennial High School in Las Vegas, Nevada. The policy issued by Defendant National Union provides medical expense coverage for accidental injuries suffered by Clark County School District student-athletes such as Mr. Phillips. Pursuant to the policy, Defendant paid medical expenses on behalf of Mr. Phillips. The policy also contained a "Catastrophe Cash Benefit Rider," also referred to as the "CAT Rider," which states in pertinent part as follows:

> **Catastrophe Cash Benefit.** If injury to the insured results, within 180 days of the date of the accident that caused the injury, in Paralysis or Coma, the Company will pay a benefit under the conditions described in this Rider. In order for a benefit to be payable under this Rider, the Paralysis or Coma must continue for a Waiting Period of 6 consecutive months, must be determined by a Physician to be permanent and irreversible at the end of the Waiting Period and must result in Disability. The benefit payable is based on the percentage of the Initial Lump Sum and Monthly Maximum Amount(s) shown below for the causes of Disability shown below.

*Plaintiff's Motion for Partial Summary Judgment (#27), Exhibit 3.*

The CAT Rider contains express definitions of the terms Disabled/Disability and Paralysis as follows:

> **Disabled/Disability -** as used in this Rider, means that the insured is unable while under the regular care of a Physician, to engage in any of the usual activities of a person of like age and sex whose health is comparable to that of the insured immediately prior to the accident.

> **Paralysis -** as used in this Rider, means the complete loss of function in a part of the body as a result of neurological damage, as determined by a Physician.

*Id.*

The general Definitions section of the Blanket Accident Insurance Policy also defines the word Physician as follows:

> **Physician -** means a licensed practitioner of the healing arts acting within the scope of his or her license who is not: 1) the Insured; 2) an Immediate Family Member; or 3) retained by the Policyholder.

*Motion (#27), Exhibit 2, pg. 3.*

On May 13, 2009, a claim representative for National Union sent a letter to Mr. Phillips' physician, Robert Voy, M.D., informing him of the coverage provisions under the CAT Rider. *Plaintiff's Motion for Partial Summary Judgment (#27), Exhibit 5.* The letter stated that in order to evaluate for the Catastrophe Cash Benefit under the policy, the claim representative would need additional medical records. The representative requested that Dr. Voy provide a copy of the history and physical, admission and discharge summaries, and most recent progress notes from the rehabilitation facility where Mr. Phillips was a patient. The letter further stated that "[a] *physician* must determine if the paralysis is complete, permanent and irreversible. Once this information is received the file will be sent to an independent medical consultant for review." *Id.*

On May 28, 2009, Dr. Voy sent a letter to National Union's claim representative stating that Mr. Phillips "is presently quadriplegic from the neck down including total paralysis of both upper and lower extremities." *Plaintiff's Motion for Partial Summary Judgment (#27), Exhibit 6.* Dr. Voy's letter went on to summarize the limited extent of Plaintiff's reflexes and ranges of motion in the upper and lower extremities. In regard to Mr. Phillips' "Overall Physical Status," Dr. Voy stated:

> Small objects can be fixed in his contracted hand. His elbow lacks 20 degrees extension. Eating and drinking are spastic at best. All of these movements are limited because of dysreflexia. He needs assistance dressing himself. Bowel movements need regular laxative stimulation. Bladder function is slow and he also has incontinence at times.

*Id.*

Dr. Voy concluded that "with a reasonable degree of medical certainty after nine months of continued therapy LaQuan's disability is permanent. He will need lifetime therapy to prevent any further contractures and more permanent disability." *Id.*

National Union's claim representative obtained a neurological review of Mr. Phillips'

medical records by Leonard Topper, M.D. to determine whether Mr. Phillips qualified for the

Catastrophe Cash Benefit under the language of the policy.  Based on his review of Mr. Phillips'

records, which included Dr. Voy's May 28, 2009 letter, Dr. Topper concluded that Plaintiff's

impairments and capabilities do not meet the definition of paralysis as stated in the CAT Rider.

*Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment (#33), Exhibit 19, Dr.*

*Topper's June 19, 2009 Report, pg. 3.*  Dr. Topper stated that Mr. Phillips "suffers from cervical

myelopathy, with incomplete recovery."  He further stated:

> The claimant can get up from sitting position, can take a glass of
> water, and can walk with a walker or 2 canes.  This indicates that,
> although the claimant does suffer from a significant degree of
> cervical myelopathy, his loss of motor strength and extremities use is
> incomplete.  Therefore, this condition doesn't meet the definition of
> Paralysis, "the complete loss of function in a part of the body", and
> doesn't meet the definition of Disability where "the insured is unable
> ... to engage in any of the usual activities of a person of like age and
> sex..."  Although the claimant's range of activities is severely limited,
> he regains his ability to ambulate (with assistive devices), and
> therefore doesn't meet criteria for disability.

*Id. pgs 3-4.*

Based on Dr. Topper's opinions, the Defendant denied Plaintiff's claim for the Catastrophe

Cash Benefit.  *Plaintiff's Motion for Partial Summary Judgment (#33), Exhibit 7, June 23, 2009*

*denial letter.*

Plaintiff argues in his motion for partial summary judgment filed on September 12, 2011

that the language of the CAT Rider is unambiguous and that he has met all the conditions required

for payment of the Catastrophe Cash Benefit based on his paralysis and disability.  He therefore

argues that he is entitled to judgment as a matter of law on his breach of contract claim.  Defendant

National Union filed its cross-motion for summary judgment on October 14, 2011 in which it

argues that Plaintiff is not entitled to the Catastrophe Cash Benefit under the plain and

unambiguous language of the policy and Defendant is therefore entitled to judgment as a matter of

law on all claims.

Plaintiff served interrogatories and requests for production of documents on Defendant on

June 24, 2011.  Defendant served its objections and responses on or about August 3, 2011.

Plaintiff's counsel sent a letter to Defendant's counsel on September 15, 2011 disputing the validity of the objections and the sufficiency of the discovery responses.  Plaintiff's counsel followed up with a letter on October 18, 2011 requesting that National Union provide its policies and procedures manuals which Plaintiff stated it needed for the upcoming depositions.  *Motion to Compel (#39), Exhibit 7.*  Defendant's counsel responded by letter dated October 21, 2011 that National Union has no policies and procedures manuals.  *Id. Exhibit 8.*  The parties met and conferred on November 10, 2011, but could not resolve their dispute regarding Defendant's objections and discovery responses. Plaintiff therefore filed his initial motion to compel on November 17, 2011.

## DISCUSSION

### 1.      Timeliness of Plaintiff's Motion to Compel.

A motion to compel filed during the discovery period will rarely be considered untimely. Absent unusual circumstances, however, it should be filed before the scheduled date for dispositive motions.  *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D.Nev. 1999).  *See also Thurston v. City of North Las Vegas*, 2011 WL 3841110, *1 (D.Nev. 2011) and *Hall v. Schumacher*, 2011 WL 4458845 (D.Nev. 2011).  In this case, the Court, on August 3, 2011, extended the deadline for completing discovery to February 24, 2012 and extended the dispositive motion deadline to March 26, 2012.  *Order (#26).*  Without waiting for the completion of discovery, however, Plaintiff filed his motion for partial summary judgment on September 12, 2011 and Defendant filed its cross-motion for summary judgment on October 14, 2011.  Although Plaintiff's motion to compel is not untimely under *Gault*, the District Judge's decision on the summary judgment motions could render moot the discovery sought by Plaintiff in the instant motion to compel.  Discovery obtained pursuant to this order could also result in the parties requesting further leave to supplement their briefs on the motions for summary judgment.  In the interest of judicial economy, therefore, the parties should decide whether they wish to proceed with the pending motions for summary judgment or request that they be withdrawn or stayed until discovery potentially relevant to the policy's interpretation is completed.

. . .

1

**2.      Scope of Relevant Discovery.**

2

Rule 26(b)(1) of the Federal Rules of Civil Procedure, as amended in 2000, provides that a

3

party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim

4

or defense.  Relevancy under Rule 26(b)(1) remains broad and is liberally construed.  *EEOC v.*

5

*Caesars Entertainment, Inc.,* 237 F.R.D. 428, 431-32 (D.Nev.2006).  Pursuant to Rule 26(b)(2)(C),

6

the court may preclude or limit discovery on the grounds that the burden or expense of the proposed

7

discovery outweighs its likely benefit.  In deciding whether to prohibit or limit discovery, the court

8

should consider the totality of the circumstances, weighing the value of the material sought against

9

the burden of providing it, and taking into account society's interest in furthering the truth seeking

10

function in the particular case before the court.  *Id.*

11

The party opposing discovery has the burden of showing that the discovery is overly broad,

12

unduly burdensome or not relevant.  *Graham v. Casey's General Stores,* 206 F.R.D. 251, 253-4

13

(S.D.Ind. 2000).  To meet this burden, the objecting party must specifically detail the reasons why

14

each request is irrelevant.  *Id.,* citing *Schaap v. Executive Indus., Inc.,* 130 F.R.D. 384, 387

15

(N.D.Ill.1990); *Walker v. Lakewood Condominium Owners Assoc.,* 186 F.R.D. 584, 587

16

(C.D.Cal.1999).  When a request for discovery is overly broad on its face or when relevancy is not

17

readily apparent, however, the party seeking the discovery has the burden to show the relevancy of

18

the request.  *Rezaq v. Nalley*, 264 F.R.D. 653, 656 (D.Colo. 2010).

19

**3.      Discovery of Extrinsic Evidence Relevant to Policy Interpretation.**

20

Defendant argues that because Plaintiff has moved for summary judgment on the grounds

21

that the policy language is unambiguous, he should be barred from pursuing discovery on the issue

22

of policy ambiguity.  It is not necessarily contradictory for an insured to argue that the plain

23

language of the policy supports his position on coverage, or, in the alternative, that the policy

24

language is ambiguous and should be construed in his favor.  Plaintiff has therefore not abandoned

25

his right to assert that the policy is ambiguous if his motion for partial summary judgment is

26

denied.

27

"'The question of whether an insurance policy is ambiguous turns on whether it creates

28

reasonable expectations of coverage as drafted.'"  *Powell v. Liberty Mutual Fire Ins. Co.*, 127 Nev.

6

14, 252 P.3d 668, 672 (2011), quoting *United Nat'l Ins. Co. v. Frontier Ins. Co.,* 120 Nev. 678, 684, 99 P.3d 1153, 1157 (2004).  Any ambiguity in the policy will be interpreted against the insurer.  *Id.*  The terms used in the policy should be understood in their plain, ordinary and popular sense.  *National Union Fire Ins. v. Reno's Exec. Air,* 100 Nev. 360, 364, 682 P. 2d 1380, 1383 (1984).  Clauses providing coverage are interpreted broadly so as to afford the greatest possible coverage to the insured.  *Id.* 100 Nev. at 365, 682 P.2d at 1383.

Extrinsic evidence can be used to prove the meaning of an ambiguous policy provision. *Machinery Movers v. Fidelity and Deposit Co. of Maryland*, 2007 WL 3120029, *3  (N.D. Ill. 2007) (applying Illinois law).  *See also M.C. Multi-Family Dev. v. Crestdale Assocs.*,124 Nev. 901, 914, 193 P.3d 536 (2008) ("Parole evidence is admissible for ... ascertaining the true intentions and agreement of the parties when the written instrument is ambiguous.").  The Ninth Circuit, in applying California law, has also stated that even where the contract's language may initially appear unambiguous, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is susceptible.  *First Nat'l Mortgage. Co. v. Federal Realty Investment Trust*, 631 F.3d 1058,1067 (9th Cir. 2010), citing *Morey v. Vannucci*, 64 Cal.App.4th 904, 912, 75 Cal.Rptr.2d 573 (1998).

Courts generally decline to decide the issue of ambiguity on a motion to compel production of information potentially relevant to the insurance policy's interpretation.  *See Machinery Movers v. Fidelity and Deposit Co. of Maryland*, at *3; *Sunnen Products Co. v. Travelers Cas. and Sur. Co.*, 2010 WL 743633, *2 (E.D.Mo. 2010); *Leski v. Federal Ins. Co.*, 129 F.R.D. 99, 104 (D.N.J. 1989) and *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 105 (D.N.J. 1990). Because relevant information need not be admissible in order to be discoverable, however, the fact that a party is permitted to discover extrinsic evidence does not mean that it will be admissible at trial.

Two examples of extrinsic evidence potentially relevant to the interpretation of an ambiguous insurance policy provision are (1) the policy's drafting history and (2) other claims or lawsuits involving the same policy provision in issue.  Courts generally hold that the policy drafting history is discoverable.  *Leski v. Federal Ins. Co.*, 129 F.R.D. at 104; *Nestle Foods Corp. v. Aetna*

7

1   *Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990); *Champion International Corp. v. Liberty Mut.*

2   *Ins. Co.*, 129 F.R.D. 63, 67 (S.D.N.Y. 1989); *Mariner's Cove Site B. Assocs. v. Travelers*

3   *Indemnity. Co.*, 2005 WL 1075400, *1 (S.D.N.Y 2005); *Young v. Liberty Mut. Ins. Co.*, 1999 WL

4   301688, *5 (D.Conn. 1999); and *Viking Yacht Co. v. Affiliated FM Insurance Co.*, 2008 WL

5   8715540, *2 (S.D.Fla. 2008).  *Contra, Lappin v. Gwartney*, 2001 WL 185167 *3 (D. Kan. 2001)

6   (denying production of the policy drafting history because the insured had not made a showing that

7   the policy language was ambiguous).  Most courts also permit discovery regarding other lawsuits

8   and claims involving the identical policy provisions.  *Sunnen Products Co. v. Travelers Cas. and*

9   *Sur. Co.*, 2010 WL 743633, at *2; *Transcap Associates, Inc. v. Euler Hermes American Credit*

10  *Indemnity Co.*, 2009 WL 1543857. *2 (N.D. Ill. 2009); *Young v. Liberty Mut. Ins. Co.*, 1999 WL

11  301688; *Leski v. Federal Ins. Co.*, 129 F.R.D. at 105-06; and *Nestle Foods Corp. v. Aetna Cas. &*

12  *Sur. Co.*, 135 F.R.D. 101, 106-07 (D.N.J. 1990).  As the court in *Nestle* observed, such information

13  "may show that identical language has been afforded various interpretations by the insurer" and

14  "could undermine the insurer's position that the language in question is clear and unambiguous."

15  *Id.*, 135 F.R.D. at 106.

16      Because discovery regarding other similar claims or lawsuits may be burdensome, however,

17  the courts also impose limits on the scope, time frame or number of other similar claims to be

18  produced.  *See Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. at 107; *Sunnen Products*

19  *Co. v. Travelers Cas. and Sur. Co.*, 2010 WL 743633 at *4; *Transcap Associates, Inc. v. Euler*

20  *Hermes*, 2009 WL 1543857, at *2; and *Young v. Liberty Mut. Ins. Co.*, 1999 WL 301688.  The

21  courts in *Nestle*, *Sunnen* and *Young* limited the production to the ten earliest and ten most recent

22  claims for a particular time period.  A few decisions have denied other claim discovery on the

23  grounds that the burden of the discovery outweighs its probative value.  *Leski v. Federal Ins. Co.*,

24  129 F.R.D. at 106; *Champion Intern. Corp. v. Liberty Mut. Ins. Co.*, 1989 WL 299156 (S.D.N.Y.

25  1989) (denying motion to compel because plaintiff did not adequately define the scope of requested

26  "similar" claims).

27  . . .

28  . . .

8

**4.    Interrogatories.**

   **A.    Defendant's Objections that Plaintiff's Interrogatories
           Exceed the Authorized Limit of 25 Interrogatories.**

Plaintiff's First Set of Interrogatories contained twenty-one (21) separately numbered interrogatories.   Plaintiff's Second Set of Interrogatories contains two additional interrogatories, Nos. 22 and 23.  The interrogatories do not contain expressly numbered subparts.   Defendant objected to Interrogatory Nos. 14 through 23, however, on the ground that the first thirteen (13) interrogatories, including subparts, exceeded the authorized maximum of 25 interrogatories. Plaintiff disputes this contention, but requests leave to serve the additional interrogatories if the Court agrees with Defendant.

Rule 33(a)(1) of the Federal Rules of Civil Procedure provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."  The 1993 Advisory Committee Note explained how this provision should be interpreted:

> Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discretely separate subjects.  However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

In *Kendall v. GES Exposition Services Inc.,* 174 F.R.D. 684, 685 (D.Nev. 1997), the court held that the subparts of an interrogatory are to be counted as part of but one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question.  The court stated that the best test to determine whether subparts are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question.  If the question in the subpart can be answered independently of the "primary" question, then it should be treated as a separate interrogatory.  Under this test, *Kendall* stated that an interrogatory which asked the defendant whether plaintiff was given any warning or reprimand during her employment, followed by a request to identify the date of each warning or reprimand, a brief description of the incident, and the person who administered the warning/reprimand by name,

9

gender, position and address, should be considered as one interrogatory.

Other courts have used a "common theme" approach to determine whether an interrogatory contains one or more discrete subparts.  An interrogatory directed at eliciting details concerning a common theme should not be counted as multiple interrogatories.  *New River Dry Dock, Inc. v. The Falls at Marina Bay, L.P.*, 2008 WL 2620727, *4 (S.D.Fla.  2008), citing *Cardenas v. Dorel Juvenile Group, Inc.,* 231 F.R.D. 616, 620 (D.Kan. 2005).  On the other hand, an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one interrogatory.  *Id.,* citing *Swackhammer v. Sprint Corporation PCS,* 225 F.R.D. 658 (D.Kan. 2004).  Along the same line, *Willingham v. Ashcroft,* 226 F.R.D. 57, 59 (D.D.C. 2005) states that "once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated."  *See also Theobles v. Ind. Maint. Co.*, 247 F.R.D. 483, 485 (D.Vi. 2006) and *Gregg v. Local 305 IBEW*, 2010 WL 61090, *1 (N.D.Ind. 2010).

*Kendall* held that an interrogatory which asks for information, and which also asks for the identification of documents relating to that information, contains two interrogatories.  The court explained that the second question was "really a fugitive request for production of documents and the discovery effort would be better served in that format."  *Kendall*, 174 F.R.D. at 686.  Other courts agree with this interpretation.  *Banks v. Office of the Senate Sergeant-At-Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004) states an interrogatory that demands information about an event and the identification of  documents pertaining to that event asks two independent questions "because knowing that an event occurred is entirely different from learning about documents that evidence it occurred."  *See also New River Dry Dock, Inc. v. The Falls at Marina Bay, L.P.*, *supra*.  Plaintiff's Interrogatory Nos. 2 and 7 both request information and the identification of documents related to the information.  These interrogatories therefor each contain two interrogatories.

Defendant also uses Interrogatory No. 2 as the basis for its contention that the first 13 interrogatories contain multiple subparts which equal or exceed the limit of 25 total interrogatories.  Interrogatory No. 2 states as follows:

. . .

1
2

> Please explain all bases for denying Plaintiff's claim for Catastrophic
> Cash Benefit and identify all facts, knowledge and documents
> supporting said denial.

3        Defendant argues that this interrogatory contains four questions. *Opposition (#54), pg. 18.*

4   The Court disagrees.  The primary question in Interrogatory No. 2  asks Defendant to state all bases

5   for its denial of Plaintiff's claim.  The secondary question(s) asks for the facts or knowledge on

6   which the denial was based.  These secondary questions are "logically or factually subsumed within

7   and necessarily related to the primary question." *Kendall, supra.*  There is also only one theme to

8   the interrogatory–the reasons or bases for Defendant's denial of Plaintiff's claim.  The secondary

9   questions asks for the details relating to that theme.  Therefore, with the exception of the request for

10  documents, Interrogatory No. 2 constitutes only one question.

11        Without any further explanation, Defendants asserts that "interrogatories 4, 5, 6, 7, 9, 10, 11

12  and 12 each contain 2 discrete questions." *Opposition (#54), pg. 18.*  Based on the Court's review

13  of these interrogatories, however, they each contain a single primary question or common theme.

14  Most of the interrogatories ask the Defendant to state its position with regard to a particular event

15  or contention and to identify the facts that support its position and the persons with knowledge of

16  those facts.  Having reviewed all 23 interrogatories, the Court finds that only Interrogatory Nos. 2

17  and 7 contain more than one question.  Plaintiff has served a total of 25 interrogatories and

18  Defendant's objections based on Rule 33(a)(1) are overruled.  It is therefore unnecessary to grant

19  Plaintiff's alternative request for leave to serve more than 25 interrogatories.

20                        **B.    Defendant's Other Objections.**

21        **Interrogatory No. 7** states that "[w]ith respect to the history leading to the formation of the

22  subject contract entered between National Union ... and Clark County School District, please

23  identify the name, address and telephone number of all persons with knowledge of the formation of

24  the subject contract, and identify all documents, notes, memos, or other written materials that relate

25  to or were part of, directly or indirectly with any policy changes and additions made with

26  . . .

27  . . .

28  . . .

11

1  evaluations and formation of the subject contract."[1]

2   Defendant objected to Interrogatory No. 7, and to each of the subsequent interrogatories

3  discussed herein, on the grounds that it seeks irrelevant information, is compound, vague,

4  ambiguous, unintelligible, overly broad and unduly burdensome.  Defendant also objected to the

5  extent that the interrogatory seeks trade secrets or confidential business information, or information

6  protected by the right of privacy.

7   Defendant's objections are boilerplate.  There is, however, merit to its objections that

8  Interrogatory No. 7 is vague and overly broad and, to that extent, irrelevant.  The only policy

9  provision at issue in this case is the Catastrophe Cash Benefit Rider.  Information regarding any

10  discussions or negotiations between Defendant and the Clark County School District relating to the

11  Rider is potentially relevant to its interpretation.  Defendant's objections to Interrogatory No. 7 are

12  therefore overruled and it is ordered to answer the interrogatory and identify all persons who have

13  knowledge regarding the formation of the insurance contract between Defendant and the Clark

14  County School District.  Defendant is also ordered to identify any and all responsive documents, in

15  addition to the policy itself, that relate to Catastrophe Cash Benefit Rider.

16   **Interrogatory No. 8** asks Defendant to list "all schools (both within the State of Nevada

17  and nationwide) that National Union provides the same insurance contract and coverage as in this

18  instant case for coverage, which includes the Catastrophe Cash Benefit, of student athletes from the

19  time period of January 1, 2000 to January 1, 2011."  The relevancy of the identities of all schools

20  that have purchased the same insurance contract and coverage from Defendant is not readily

21  apparent and Plaintiff has not provided any reason for obtaining this information.  Accordingly, the

22  Court denies Plaintiff's motion to compel Defendant to respond to Interrogatory No. 8.

23  . . .

---

 [1] Each interrogatory refers to "National Union or any of its affiliates, subsidiaries, divisions, or parent corporations."  For sake of brevity, the Court omits this language in its recitation of each interrogatory. To the extent that Defendant's affiliated or related entities were involved in the subject matter of an interrogatory, Defendant's answer should respond in regard to those entities as well as to itself.

**Interrogatory No. 10** asks Defendant whether it "allow[s] potential policyholders to make changes, modifications, additions, addendums, or deletions to any of the language in its disability policies or contracts.  If so, please state any such changes, modifications, additions, addendums, or deletions that have been made with respect to its disability policies or contracts and the reasons for such changes."  **Interrogatory No. 11** asks the related question "whether CLARK COUNTY SCHOOL DISTRICT request[ed] any changes, modifications, additions, addendums or deletions to any portion of the subject insurance policy before executing the contract.  If so, please state any such changes, modifications, additions, addendums, or deletions, made and the reasons for such changes."

Insurance policy provisions are generally construed against the insurer because it drafts the policy language.  Plaintiff has also alleged that Defendant's interpretation of the Catastrophe Cash Benefit Rider is unconscionably narrow.  *Complaint (#1), Fifth Claim for Relief*, ¶¶ 36-37.  To prevail on this claim, plaintiff must show that the provision is both procedurally and substantively unconscionable.  A clause is procedurally unconscionable when a party lacks a meaningful opportunity to negotiate its terms.  *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553-54 96 P.3d 1159, 1162 (2004)*.*  Interrogatory Nos. 10 and 11 are therefore relevant to the issue of ambiguity and Plaintiff's unconscionability claim.  The Court, however, limits the scope of these interrogatories to the Catastrophe Cash Benefit Rider.  Defendant's objections to Interrogatory Nos. 10 and 11 are overruled to this extent and it is ordered to answer the interrogatories.

**Interrogatory No. 13** asks Defendant to "state the number of claims that National Union ... [has] retained Leonid L. Topper, M.D. to conduct an evaluation of an insured of the Defendant to determine whether a particular coverage was applicable to an insured during the time period of September 5, 2003 to the present, and with respect to each of those instances, state the number of times Dr. Topper found the insured to meet the coverage definition at issue, and the number of times Dr. Topper found the insured did not meet the definition at issue."  In addition to its other objections, Defendant objected that Interrogatory No. 13 "assumes facts not in evidence.  Dr. Topper was selected and retained through Genex Services, Inc., a third party vender."

. . .

In support of this interrogatory, Plaintiff relies on *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1101 (9th Cir. 2004) which held that the insurer's use of a biased IME physician supported a verdict of bad faith against the insurer.  Stated otherwise, an insurer has a potential defense to an allegation of bad faith if its denial of coverage is based a qualified expert's opinion.  This defense may be overcome, however, by showing that the expert is biased.  *Moore v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 1642298, *8 (N.D.Cal. 2011).  Dr. Topper's "track record" as a medical consultant for Defendant is therefore relevant.

Defendant objected to Interrogatory No. 13 on the ground that it would be extremely burdensome to locate and produce the requested information.  In its opposition to the motion to compel, however, Defendant stated that it has identified thirty nine (39) claims in which Dr. Topper prepared reports at the request of the Defendant.  Of those reports, fourteen (14) "appear to support payment of benefits at issue."  *Opposition (#54), pg. 16*.  Defendant also states that it has identified nine (9) other claims involving the Catastrophe Cash Benefit Rider at issue here.  All of those claims were resolved in the insured's favor.  Dr. Topper provided reports in four of those claims.  *Id.*  Defendant therefore has the necessary information to answer Interrogatory No. 13.  Its objections are therefore overruled and it is ordered to answer Interrogatory No. 13.[2]

**Interrogatory No. 14** asks Defendant to "state the number of times that National Union ... [has] engaged the services of Genex Services, Inc. in the past 20 years to evaluate an insured of the Defendant to determine whether a particular coverage was applicable to an insured, and with respect to each of those instances, state the number of times that Genex Services, Inc. or any person acting on its behalf, found the insured to meet the coverage definition at issue, and the number of times Genex Services, Inc. or the persons acting on its behalf, found the insured did not meet the definition at issue."  This interrogatory is over broad as to both subject matter and time, and its

---

[2] There was discussion during the hearing as to whether Plaintiff is entitled to production of Dr. Topper's reports in other cases.  The Court indicated that the reports should be produced, but that Defendant may redact the identities of the insureds.  Plaintiff, however, did not actually serve a request for production of the reports and absent such a request, the Court will not order Defendant to the produce them.  Defendant should take note of the Court's statements, however, in responding to any future request for production of Dr. Topper's reports.

relevance is, at best, remote.  Information regarding Dr. Topper's record as a medical consultant for Defendant is sufficient to establish the presence or absence of bias.  Defendant's objections to Interrogatory No. 14 are therefore sustained.

**Interrogatory No. 15** asks Defendant to "state all vendors, physicians, individuals or companies besides Genex Services, Inc. that National Union ... considered to become involved in Plaintiff's claim for benefits, including why National Union ... selected Genex Services Inc. in assisting with the determination of Plaintiff LaQuan Phillips' claim for benefits."  With the exception of why Defendant selected Genex Services, Inc. to retain Dr. Topper to perform a records review of Plaintiff's claim, this interrogatory is also over broad and irrelevant.  Defendant is only required respond to this interrogatory by stating why it selected Genex Services, Inc. to obtain the medical records review at issue.  Otherwise, Defendant's objections are sustained.

**Interrogatory No. 16** asks the Defendant to "state the number of disability policies that include a Catastrophic Cash Benefit provision similar to the one at issue in Plaintiff's instant case that have been issued by National Union ... to other school districts throughout the country over the past twenty (20) years.  The relevance of this information is, at best, remote.  Defendant's objections to Interrogatory No. 16 are therefore sustained.

**Interrogatory No. 17** states that "[w]ith respect to your answer to Interrogatory No. 16 above, state how many times National Union paid out benefits under the Catastrophic Cash Benefit provision to student athletes throughout the country over the past twenty (20) years."  Although the time period covered by this interrogatory is long, Defendant states in its opposition to the motion to compel that it has identified a total ten (10) claims for benefits under the identical Catastrophe Cash Benefit Rider, including Plaintiff's.  Defendant also states that it has paid Catastrophe Cash Benefits to the insureds in the other nine claims.  This information appears to be a sufficient response to the interrogatory and Defendant is ordered to provide it in an answer under oath to Interrogatory No. 17.

**Interrogatory No. 18** asks Defendant to identify "who the 'policyholder' is under the subject insurance contract which is the subject matter of this instant litigation."  **Interrogatory No. 19** asks Defendant to identify "who the 'insured' is under the subject insurance contract which

15

is the subject matter of this instant litigation."  In addition to its other objections, Defendant

objected to these interrogatories on the grounds that the insurance contract speaks for itself, and is

the best evidence of its contents.  While the insurance policy may be the best evidence at trial,

Plaintiff is entitled to answers to these interrogatories given that there may be an issue of ambiguity

arising from the identification of the "policyholder" on the declarations pages of the insurance

policy and policy's definition of "Physician" as a practitioner of the healing arts other than "one

selected by ... the policyholder."  Defendant's objections are therefore overruled and it is ordered to

answer Interrogatory Nos. 18 and 19.

**Interrogatory No. 20** asks Defendant to "[d]escribe all marketing plans and materials used

by National Union ... from January 1, 2005 to the present date, for soliciting, advertising, marketing

and selling any applicable insurance policies to the Clark County School District for coverage of its

students participating in any sporting activities.   Neither party's briefs address this interrogatory.

Marketing, advertising or promotional materials that discuss the Catastrophe Cash Benefit Rider

could be relevant to the interpretation of the Rider.  Defendant's objections to Interrogatory No. 20

are therefore overruled to the extent it has responsive documents relating to the Catastrophe Cash

Benefit Rider that may have been provided to the Clark County School District.

**Interrogatory No. 21** states that "[i]f it is your contention that Plaintiff LaQuan Phillips is

not 'disabled' and 'paralyzed' as defined in the policy, because he can make modest efforts in

performing some of life's functions, please state all facts upon which you base that allegation and

identify each witness by name, employer and last known address that has knowledge of those

facts."  This is an appropriate contention interrogatory under Rule 33(a)(2).  Defendant's objections

are overruled and it is ordered to answer Interrogatory No. 21.

**Interrogatory No. 22** (Plaintiff's Second Set) asks Defendant to "describe National Union

Fire Insurance Company of Pittsburgh's relationship with AIG and set forth what role AIG has with

respect to the subject policy contract which is the basis for this litigation."  **Interrogatory No. 23**

(Plaintiff's Second Set) asks Defendant to "describe National Union Fire Insurance Company of

Pittsburgh's relationship with The Bank of New York (Delaware) as Trustee of the AIG Group

Insurance Trust (Delaware) and set forth what role The Bank of New York (Delaware) as Trustee

1   of the AIG Group Insurance Trust (Delaware) has with respect to the subject policy contract which

2   is the basis for this litigation."

3        Defendant National Union Fire Insurance Company of Pittsburgh is an affiliate or

4   subsidiary of the AIG group of insurance companies which has apparently been renamed.  The

5   insurance policy states that the "Policyholder" is "c/o The Bank of New York (Delaware) as

6   Trustee of the AIG Group Insurance Trust (Delaware)."  Given this designation of the

7   "policyholder," there is or may be an issue regarding who is the "policyholder" with respect to the

8   definition of "Physician" as a practitioner of the healing arts other than "one selected by ... the

9   policyholder."  Defendant's objections are therefore overruled and it is ordered to answer

10  Interrogatory Nos. 22 and 23.

11            **5.        Requests for Production.**

12        Defendant objected to Plaintiff's requests for production of documents on substantially

13  similar grounds as its objections to the interrogatories.  Defendant also objected to the requests to

14  the extent they seek documents protected by the attorney-client privilege or work-product doctrine.

15  Some of the requests are duplicative, redundant or overlapping.  The Court groups its discussion

16  and rulings on the requests by subject matter categories.

17            **A.        Underwriting Materials.**

18        **Request Nos. 1 and 18:**  Request No. 1 requests the complete underwriting file relating to

19  "the Master Application for the subject insurance policy.  Request No. 18 requests all documents

20  relating to the negotiations between Defendant and the Clark County School District regarding the

21  subject policy that was in effect on the date of the Plaintiff's accident.  Defendant's objections to

22  these requests are overruled to the extent that Defendant has any documents in its underwriting

23  file(s), besides the insurance policy itself, relating to negotiations between Defendant and the Clark

24  County School District for the purchase of the subject policy or which relate to coverage under the

25  Catastrophe Cash Benefit Rider of the subject policy.

26            **B.        Claims Manuals or Policy Interpretation Documents.**

27        **Request Nos. 3, 11, 12, 13, 20, 21, 23 and 30:**  Request No. 3 requests all claims manuals

28  regarding the handling of insurance coverage claims and relating to coverage decisions.  Request

17

No. 11 requests claims bulletins, directives, guidelines or memorandum that relate to the adjusting of claims involving the Catastrophe Cash Benefit coverage.  Request No. 12 requests documents reciting company philosophies and policies regarding claims handling policies, providing service to policy holders, good/bad faith claims handling practices, etc.  Request No. 13 requests all manuals and other writings relative to legal and litigation practices and procedures.  Request No. 20 requests procedural or operational manuals which instruct employees or agents on their day-to-day responsibilities, and procedures and guidelines for reviewing and determining claims for coverage by insureds.  Request No. 21 requests procedural or operational manuals which instruct employees or agents on their day-to-day responsibilities, and procedures and guidelines for reviewing and determining underwriting applications for insurance.

Documents relating to the handling of insurance claims, in general, or which relate to the handling of claims for benefits under the Catastrophe Cash Benefit Rider, in particular, are relevant and discoverable.  Defendant's objections to the foregoing requests on grounds of relevancy or over breadth are overruled to this extent.  Defendant represents, however, that it does not have any documents responsive to these requests.  The Court cannot compel Defendant to produce documents that do not exist.  Plaintiff is not precluded, however, from conducting discovery regarding Defendant's assertion it does not have any such documents.

**Request No. 23** requests all claims manuals, memorandum, policy statements, inter-office or inter-departmental correspondence, letters, or other writings and documents possessed by National Union and AIG and home or regional offices relating to the interpretation of the terms and exclusions to coverage of the insurance policy at issue in this action.  As the Court understands this request, it seeks internal company documents relating to the interpretation of the policy at issue.  To the extent that Defendant has any such documents relating to the interpretation of the Catastrophe Cash Benefit Rider, its objections are overruled and it is ordered to produce the documents.

**Request No. 30** requests all applicable written medical standards or qualifications used by Defendant or used by physicians at Defendant's request to determine an insured's physical ability to perform normal activities.  Defendant again represents that it has no documents responsive to this request.  Plaintiff's motion to compel is therefore denied as to Request No. 30 based on

18

Defendant's representation that it has no documents responsive to the request.

## C.    Employee Training Materials.

**Request No. 14** requests all documentation that provides proof that Defendant's claims personnel who worked on the subject claim "successfully completed training in claims handling." The Court construes this as requests for documents evidencing the training that the employees received in claims handling.  To that extent, Defendant's objections to Request No. 14 are overruled and it is ordered to produce documents responsive to the request as modified by the Court.

## D.    Financial/Net Worth Information.

**Request Nos. 5 and 6** make duplicative requests for documents relating to Defendant's net worth for the last three years according to Generally Accepted Accounting Principles (GAAP).  "A defendant's financial condition is relevant to the pursuit of punitive damages." *Momot v. Mastro*, 2011 WL 1833349, *3 (D.Nev.), quoting *Allstate Ins. Co. v. Nassiri,* 2011 WL 318101 at *3 and *United States v. Autumn Ridge Condominium Assoc.,* 265 F.R.D. 323, 327 (N.D.Ind.2009). "Although the Ninth Circuit has not defined the parameters of the dissemination of financial information during discovery when punitive damages are alleged, *EEOC v. Cal. Psychiatric Transitions,* 258 F.R.D. 391 (E .D.Cal.2009), most courts do not require the plaintiff to make a prima facie showing of merit on its punitive damage claim before permitting discovery of a defendant's net worth." *Id.*

 Defendant's financial condition and net worth information are not secret, since its annual financial reports should be on file with the departments of insurance in the states in which it is authorized to conduct business.  Although Plaintiff could obtain such publicly available information from other sources, no significant burden is imposed on the Defendant by requiring it to produce its annual financial statements for the past three years.   Defendant is only required to respond to one of these duplicative requests.  Accordingly,  Defendant's objections to Request No. 5 are overruled and it is ordered to respond the request in accordance with this order.

## E.    Other Claims or Lawsuits.

**Request Nos. 7-10**: Request No. 7 requests "all documents or papers relating to previous

1   lawsuits or claims against National Union ... within the last five (5) years alleging Breach of

2   Contract arising from the denial of payment of the Catastrophic Cash Benefit coverage to other

3   students athletes within the State of Nevada.  Request No. 8 requests the same information on a

4   nationwide basis.  Request No. 9 requests "[c]opies of all documents or papers relating to previous

5   lawsuits or claims against National Union ... within the last five (5) years alleging violation of the

6   Unfair Claims Practices Act arising from the denial of payment of the Catastrophic Cash Benefit

7   coverage to other student athletes within the State of Nevada."  Request No.10 requests the same

8   information on a nationwide basis.

9        Defendant has failed to demonstrate that it would be unduly burdensome for it to locate and

10   produce documents responsive to Request Nos. 7-10.  As this Court stated in *Pham v. Wal-Mart*

11   *Stores, Inc.* 2011 WL 5508832, *4 (D.Nev. 2011), the responding party has the burden of

12   demonstrating that a request for similar claim information is unduly burdensome.  To satisfy this

13   burden, the objecting party must provide sufficient detail regarding the time, money and procedures

14   required to produce the requested documents. The fact that production of documents will be time

15   consuming and expensive is not ordinarily a sufficient reason to grant a protective order if the

16   requested material is relevant and necessary to the discovery of admissible evidence.  *Id.* citing *In*

17   *re Toys "R" Us–Delaware, Inc. Litigation,* 2010 WL 4942645, *6 (C.D.Cal.2010).  Nor can a party

18   rely on an inadequate records keeping system as an excuse for not locating and producing relevant

19   information regarding other claims or lawsuits. *Pham, supra,* citing *Thomas v. Cate,* 715 F.Supp.2d

20   1012, 1033–34 (E.D.Cal.2010).

21        Because the Catastrophe Cash Benefit Rider only applies to injuries resulting in complete,

22   permanent and irreversible Coma or Paralysis, the total number of claims made under this coverage

23   is likely to be small.  As evidence of this, Defendant states that it has identified only ten claims for

24   benefits under the Rider.  Defendant states that it located these claims by reviewing accident

25   insurance claim files in which substantial medical payments were made on the logical assumption

26   that claims for the Catastrophe Cash Benefit will likely only be made in conjunction with policy

27   claims involving substantial medical expenses.  The Court does not disapprove of the search

28   method chosen by the Defendant so long as it is reasonably calculated to reveal all responsive

claims.

Request Nos. 7 and 8 only request documents relating to previous lawsuits or claims arising from the *denial of payment* of the Catastrophic Cash Benefit.   According to Defendant, the nine other claims involving the Rider all resulted in payment of the benefits.  Unless there was a prior denial of a claim, Request Nos. 7 and 8 do not require production of documents regarding claims that were accepted and paid.  To the extent any other claim for the Catastrophic Cash Benefit was denied, Defendant is also not initially required to produce documents that it alleges are protected by the attorney-client privilege or work-product doctrine.  Defendant must, however, provide an appropriate privilege log regarding any such documents.  Plaintiff may further move for production of such documents, if it does not believe the assertion of privilege is valid.

In regard to Request Nos. 9 and 10, Defendant states that it "reasonably believes it has been the defendant in two matters involving a policy that contains the CAT Benefit.  Neither lawsuit was filed in Nevada, nor was the CAT Benefit directly at issue."  *Opposition (#54), Declaration of Elaine Langley*, ¶ 8.  The meaning of the statement that the CAT Benefit was not "directly at issue" is vague.  Was it in some manner *indirectly* at issue?

 Defendant also argues that because the lawsuits were filed in other jurisdictions, they are irrelevant to this action which concerns alleged violations of the "Nevada Unfair Claims Practices Act."  *Opposition (#54), pg. 21.* This argument is without merit.  Nevada Revised Statute (NRS) 686A.310 was patterned after the National Association of Insurance Commissioners (NAIC) Model Unfair Trade Practices Act, Section 4.9.  *See Tweet v. Webster*, 614 F.Supp. 1190, 1192 (D. Nev. 1985)*.*  Numerous states have adopted versions of the NAIC Model Act.  *See* Stephen S. Ashley, BAD FAITH ACTIONS LIABILITY & DAMAGES (2011), §9:2.  Lawsuits from another state alleging violation of that state's version of the Model Act, or a substantially similar statute, are therefore potentially relevant and discoverable.  The Court, therefore, overrules Defendants relevancy objections to Request Nos. 9 and 10.  The Court orders the Defendant to produce the complaints and responsive pleadings in the two lawsuits referred to in Ms. Langley's declaration.  Plaintiff may seek additional documents relating to the actions if the pleadings indicate that the actions involved substantially similar claims to those at issue in this action.

1

**F.      Documents Relating to the Handling of Plaintiff's Claim.**

2

       **Request Nos. 15, 17, 24, 25, 28, and 29** request documents relating to the handling of the

3

Plaintiff's claim that may not be included in the produced claims file.  Although Defendant states

4

its standard boilerplate objections, it also responded to these requests by stating that any documents

5

responsive to these requests are contained in the claim file produced to the Plaintiff, except for a

6

limited number of documents as to which privilege has been claimed and a privilege log provided.

7

Plaintiff has not moved to compel the production of allegedly privileged documents.  Accordingly,

8

Plaintiff's motion to compel further production of documents in response to Requests 15, 17, 24,

9

25, 28 and 29 is denied so long as Defendant has produced all responsive documents relating to

10

Plaintiff's claim, other than those which it asserts are privileged.

11

**G.      Sales or Promotional Materials Relating to the Catastrophe Cash
Benefit Rider.**

12

13

       **Request No. 19** requests "all sales and promotional brochures, pamphlets or literature

14

relating to or describing the Catastrophic Cash Benefits coverage within the subject insurance

policy that was in effect on September 5, 2008."  While such documents, if they exist, cannot

15

override unambiguous policy provisions, they are potentially relevant to the interpretation of the

16

Rider if the Court finds that it is ambiguous.  Defendant's objections to Request No. 19 are

17

therefore overruled and it is ordered to produce any documents responsive to the request.

18

**H.      Documents Relating to Defendant's Denials of Plaintiff's Requests for
Admissions.**

19

20

       **Request No. 33** is inartfully worded, but appears to request all documents which relate to

21

Defendant's denials, in whole or in part, of any of Plaintiff's requests for Admissions.

22

Alternatively, Request No. 33 asks Defendant to identify any documents it has already produced

23

that relate to its denials of requests for admission.  The Court sustains Defendant's objection to this

24

Request to the extent that it requires Defendant to identify documents produced in response to other

25

requests for production.  To the extent that Defendant's denials of the requests for admissions are

26

based on non-privileged documents that have not been otherwise produced, it should produce those

27

documents in response to Request No. 33.

28

. . .

**6.**    **Plaintiff's Request for an Award of Reasonable Expenses Incurred in Filing the Motions.**

Rule 37(a)(5)(C) provides that if a motion to compel is granted in part and denied in part, the court may apportion the reasonable expenses for the motion.  Although Plaintiff's motions have been partially granted, several of the discovery requests were over broad and properly objected to.  Because there is no adequate way to apportion the attorney's fees, the Court concludes, on balance, that an award of attorney's fees or expenses to the Plaintiff is not justified.

## CONCLUSION

**IT HEREBY ORDERED** that Plaintiff's Motion to Compel Responsive Answers to Plaintiff's Written Discovery and Request for Leave of Court to Propound Additional Interrogatories to Defendant National Union Fire Insurance Company (#39) and Plaintiff's Second Motion to Compel Responsive Answers to Plaintiff's Written Discovery and Request for Leave of Court to Propound Additional Interrogatories to Defendant National Union Fire Insurance Company (#55) are **granted**, in part, and **denied**, in part, in accordance with the foregoing provisions of this order.

DATED this 18th day of January, 2012.

_George Foley Jr._
_____
GEORGE FOLEY, JR.
United States Magistrate Judge

23