# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LaQUAN PHILLIPS,                 )

                                 )

              Plaintiff,        )

        vs.                         )     Case No.: 2:10-cv-02068-GMN-GWF

                                 )

CLARK COUNTY SCHOOL DISTRICT;  )         **ORDER**

NATIONAL UNION FIRE INSURANCE   )

COMPANY OF PITTSBURG, PA; DOE     )

EMPLOYEES 1 through 20; DOES 1 through 20; )

ROE ENTITIES 1 through 20; AND ROE    )

CORPORATIONS 1 through 20,        )

                                 )

             Defendants.       )

_____)

       Pending before the Court is the Motion for Partial Summary Judgment Regarding Breach of Contract (ECF No. 27), filed by Plaintiff LaQuan Phillips ("Plaintiff"). Defendant National Union Fire Insurance Company ("Defendant") filed a Response (ECF No. 33) and Plaintiff filed a Reply (ECF No. 35). For the reasons discussed below, Plaintiff's Motion is DENIED.

       Also pending before the Court is the Cross Motion for Summary Judgment (ECF No. 34) filed by Defendant. Plaintiff filed a Response (ECF No. 42) and Defendant filed a Reply (ECF No. 57). For the reasons discussed below, Defendant's Motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

       This case arises from a tragic injury suffered by Plaintiff, LaQuan Phillips ("Plaintiff"), during a high school football game on September 5, 2008. (Mot. for Partial SumM. J. 3:13-15, ECF No. 27.) Pursuant to an insurance policy purchased by Clark County School District,

National Union Fire Insurance Company ("Defendant") paid for Plaintiff's medical bills above the deductible stated in that insurance policy.[1] (*Id.* at 3:20-23.)  However, Defendant refused to pay the $500,000.00 catastrophe cash benefit ("Cash Benefit") under the subject insurance policy. (*Id.* at 2:28-3:2.)  Thus, Plaintiff filed this suit seeking payment of this Cash Benefit. (*Id.* at 3:4-9.)

### A.    Plaintiff's Injury

In 2008, Plaintiff was the captain of the Green Valley High School football team. (Compl. ¶ 11, ECF No. 1-2.)  On September 5, 2008, Plaintiff was participating in a football game against Centennial High School when he was hit by another player. (*Id.*)  As a result of injuries sustained from this hit, Plaintiff was "diagnosed as a C4 quadriplegic and immediately underwent a C3-4 anterior cervical discectomy and C3-C7 laminectomies for decompression." (Mot. for Partial Summ. J. 3:17-19, ECF No. 27.)

### B.    The Insurance Policy

In April 2008, just prior to the Plaintiff's September 5, 2008 injury, the Clark County School District purchased an insurance policy for the benefit of the school district's student athletes. (Pl.'s Mot. Partial Summ. J. 4:5-6, ECF No. 27.)  Notably, this insurance policy included a Catastrophe Cash Benefit Rider (the "Rider") that would provide a cash payment for those students who suffered sufficiently devastating injuries during interscholastic activities. (*Id.* at 2:23-26.)  This provision provided that:

> **Catastrophe Cash Benefit.** If Injury to the Insured results, within 180 days of the date of the accident that caused the Injury, in *Paralysis* or Coma, the Company will pay a benefit under the conditions described in this Rider.  In order for a benefit to be payable under this Rider, the *Paralysis* or Coma must continue for a Waiting Period of 6 consecutive months, must be determined by a Physician to be permanent and irreversible at the end of that Waiting Period, and must result in *Disability*.

---

[1] Defendant expressly recognizes that the determination regarding whether the Paralysis is permanent and irreversible "may not be made by a physician retained by the Company (National Union)." (Def.'s Resp. 15:5-6, ECF No. 33.)

(*Id.* at Ex. 2, ECF No. 27 (emphasis added).)  Thus, the Rider requires "Paralysis" and "Disability" before a student is entitled to the $500,000.00 cash benefit.  (*Id.*)  To that end, the Rider also defines "Paralysis" as "the complete loss of function in a part of the body as a result of neurological damage, as determined by a Physician." (*Id.*)  Additionally, under the Rider, a student is "Disabled" when that student "is unable while under the regular care of a Physician, to engage in any of the usual activities of a person of like age and sex whose health is comparable to that of the [student] immediately prior to the accident." (*Id.*)  Finally, the determination that the student is paralyzed must come from a Physician, as defined by the Rider. (*Id.*)  The Rider defines "Physician" as a "licensed practitioner of the healing arts acting within the scope of his or her license who is not 1) the Insured; 2) an Immediate Family Member; or 3) retained by the Policyholder." (*Id.*)

### C.   Defendant's Denial of the Catastrophe Cash Benefit

Since Plaintiff's injury, he received regular treatment from Robert Voy, M.D. ("Dr. Voy"), who practices in general medicine and sports medicine. (*Id.* at 5:17-20.)  As such, more than eight months after Plaintiff's injury, Defendant wrote to Dr. Voy requesting "additional medical records," to be used in evaluating whether Plaintiff qualified for the cash benefit. (*Id.* at Ex. 5, ECF No. 27.)  Defendant specifically informed Dr. Voy that awarding the cash benefit under the Rider required that "[a] *physician* must determine if the paralysis is complete, permanent and irreversible." (*Id.* (alteration in original).)  Dr. Voy responded that, in his medical opinion, Plaintiff was paralyzed and that paralysis was complete, permanent, and irreversible. (*Id.* at Ex. 6, ECF No. 27.)  Specifically, on May 28, 2009, Dr. Voy informed Defendant that, although Plaintiff made improvements throughout his treatment, Plaintiff was "presently a quadriplegic from the neck down including total paralysis of both upper and lower extremities." (*Id.*)  Dr. Voy also informed Defendant that Plaintiff still faced substantial limitations and disabilities with his hands, arms, legs, and organs. (*Id.* at 6:22-24 (quoting Ex.

6, Letter of Dr. Voy.)  Moreover, Dr. Voy opined that Plaintiff's "upper extremity status [was] permanent and irreversible," and that "with a reasonable degree of medical certainty, after nine months of continued therapy, [Plaintiff's] disability is permanent." (*Id.* at 6:25-27 (quoting Ex. 6, Letter of Dr. Voy).)

After Defendant received Dr. Voy's response, Defendant arranged to have these records reviewed by its own retained expert, Leonid L. Topper, M.D. ("Dr. Topper"). (Def.'s Resp. to Pl.'s Mot. Partial Summ. J. 6:5-6, ECF No. 33.)  Thereafter, Dr. Topper spent .7 hours, or 42 minutes, reviewing Plaintiff's medical records. (*See* Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 13, ECF No. 42-13.)  On June 19, 2009, Dr. Topper concluded that Plaintiff did not qualify for the Cash Benefit. (Def.'s Resp. to Pl.'s Mot. Partial Summ. J. Ex. 2 at 55-58, ECF No. 33-2.)  Thus, despite Dr. Voy's letter stating to the contrary, Defendant sent a letter to Plaintiff's legal guardian stating that "no benefits [were] payable at th[at] time." (Mot. Partial Summ. J. Ex. 7, ECF No. 27.)  Specifically, Plaintiff was denied payment of the Cash Benefit via a letter dated June 23, 2009 because his injuries failed to meet the Defendant's definitions of "disability and paralysis." (*Id.*)

### D.  Plaintiff's Current State of Health

Plaintiff began making progress before he was discharged from the hospital.  First, in November 2008 – two months after the injury, doctors noted that Plaintiff "managed a few steps with one person with moderate assist." (Def.'s Resp. Mot. Summ. J. Ex. 1, at 2, ECF No. 33-1.)  At the same time, however, doctors noted that Plaintiff was "lacking trunk and pelvic control in muscle activity." (*Id.*)  Additionally, the doctors observed that Plaintiff still suffered from "neurogenic bowel and bladder," thus, requiring "4-6 hour catheterizations" and "bowel care . . . every other day." (*Id.*)  Later, on January 14, 2009 – four months after the injury, Plaintiff's physical therapist reported that Plaintiff was ambulatory with a "quad cane." (*Id.* at Ex. 3, ECF No. 33-1.)  On April 6, 2009—seven months after the injury, Plaintiff's physical

therapist recognized that Plaintiff's "safety is compromised and he occasionally has a fall or loss of balance," when Plaintiff attempts to walk, even when walking with a quad cane. (*Id.* at Ex. 12, ECF No. 33-2.)  Furthermore, the physical therapist observed that "[b]ecause of deficits in his hand function . . . , [Plaintiff] has difficulty dressing himself, and bathing safely." (*Id.*)

Even as late as May 26, 2009, over nine months after Plaintiff's injury, Dr. Voy noted that the hardening of the muscles and tendons in Plaintiff's upper extremities had not improved and was, thus, "permanent and irreversible." (Pl.'s Mot. Partial Summ. J. Ex. 6, at 1, ECF No. 27.)  Dr. Voy also noted that Plaintiff could hold objects only when fixed in his hand. (*Id.* at 2.) Furthermore, at this point, Plaintiff was still unable to dress himself. (*Id.*)  Additionally, Plaintiff's "[b]owel movements need[ed] regular stimulation" and Plaintiff's "[b]ladder function [was] slow and he also [had] incontinence at times." (*Id.*)  Dr. Voy concluded that Plaintiff would "need lifetime therapy to prevent any further contractures and more permanent disability. (*Id.*)

More recently, on August 31, 2011—almost two years after the injury, Defendant again retained an expert, Stuart S. Kaplan, M.D. ("Dr. Kaplan") that determined that Plaintiff "is left with a very significant spastic quadriplegia." (Def.'s Resp. to Pl.'s Mot. Partial Summ. J. Ex. 1, at 57, ECF No. 33-1.)  Dr. Kaplan further opined that, although Plaintiff is not paralyzed within the meaning of the Rider, "he has been left with a significant disability." (*Id.*)

## II.   APPLICABLE SUBSTANTIVE LAW

### A.   Summary Judgment Standard – Federal Law

Although a federal district court sitting in diversity is bound to apply state substantive law, that court will still apply federal procedural law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Although the "[c]lassification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor," *Gasperini*, 518 U.S. at 427, the Ninth Circuit has routinely held that, "[i]n diversity cases, procedural issues related to summary judgment are

controlled by federal law." *Caesar Elec. Inc. v. Andrews*, 905 F.2d 287, 289 n.3 (9th Cir. 1990); *see also Snead v. Metro Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001) (summarizing Ninth Circuit law on the application of federal summary judgment procedures in diversity cases).

### B. Substantive Law – Nevada Law

"Federal diversity jurisdiction provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law." *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 426, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).  As the Supreme Court stated in *Erie R. Co v. Tompkins*, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." 304 U.S. 64, 78 (1938).

In this case, all of Plaintiff's claims arise under Nevada state law (*see* Compl., ECF No. 1-2); this matter is before the Court under the Court's diversity jurisdiction.  Accordingly, although the Court applies the federal summary judgment standard, the Court is bound to apply Nevada state law when analyzing the underlying claims.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *see generally* Fed. R. Civ. P. 56(a).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor."  *Diaz v. Eagle Produce Ltd. P'ship*, 521

F.3d 1201, 1207 (9th Cir. 2008) (citation omitted).  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

When determining whether to grant a motion for summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

Once the moving party carries the initial burden, the burden shifts to the party opposing the motion to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Orr v.*

*Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  If, however, the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

## IV.   **DISCUSSION**

Both Plaintiff and Defendant National Union Fire Insurance Company of Pittsburgh brought cross-motions for summary judgment in this case.  However, Plaintiff's motion addressed only his breach of contract cause of action.  Accordingly, the Court addresses the cross-motions together for the purposes of the breach of contract cause of action and then discusses the remaining causes of action, on which the Defendant alone filed a motion for summary judgment.

### A.   **Breach of Contract - Both Parties' Motions for Summary Judgment are Denied**

Generally, questions of contract construction are questions of law and often suitable for determination by summary judgment. *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (1990).  However, only when the language of the contract is clear, is judicial interpretation rendered unnecessary. *Great Am. Airway v. Airport Auth. of Washoe Cnty.*, 743 P.2d 628, 629 (1987).  If a contract provision or term is reasonably susceptible to more than one interpretation, it is ambiguous. *Margrave v. Dermody Props., Inc.*, 878 P.2d 291, 293 (Nev. 1994); *see also State Farm Mut. Auto Ins. Co. v. Fernandez*, 767 F.2d 1299, 1301 (9th Cir. 1985) (stating that "[a]n ambiguity in a contract creates a question of fact"); *Werry v. Phillips Petroleum Co.*, 540 P.2d. 792, 797-98 (Idaho 1975) (noting that where the terms of a contract are ambiguous, its interpretation and meaning is a question of fact).  Thus, summary judgment is inappropriate whenever a term or provision in the contract is ambiguous. *Univ. of Nev., Reno v. Stacey*, 997 P.2d 812, 814 (2000).  Although a determination that a contract is ambiguous

may create questions of fact, the underlying determination that the contract is, in fact, ambiguous is a question of law for the Court. *Margrave*, 878 P.2d at 293.

### 1.    The Rider requires that the Paralysis persist only six months.

The Court first notes that the Rider requires that the injury persist only through the Waiting Period of six months.  Specifically, the Rider states that "[i]n order for a benefit to be payable under this Rider, the Paralysis or Coma must continue for a Waiting Period of 6 consecutive months . . .." (Pl.'s Mot Summ. J., 49, Ex. 2, ECF No. 27.)  Thus, pursuant to the plain terms of the Rider, it appears that an injured person could make a miraculous complete recovery on the day following the passing of the Waiting Period and still qualify for the cash benefit for any injuries the injured person still displayed on the final day of the Waiting Period. In this case, the Waiting Period was complete on March 5, 2009.  Accordingly, the Defendant's emphasis on Plaintiff's progress beyond this date is misplaced.  Given the current undisputed facts, the Court is unable to conclusively determine[2] Plaintiff's state of health at the time the Waiting Period ended.  Because both parties fail to provide sufficient undisputed facts as to the Plaintiff's state of health upon the termination of the Waiting Period, material issues of fact remain that preclude summary judgment.

### 2.    The Rider is ambiguous because it fails to specify when Defendant will determine whether the injured individual qualifies for coverage.

The terms of the Rider are ambiguous, thus leaving additional questions of fact that preclude summary judgment.  As discussed above, the Rider requires that the injury persist through a Waiting Period before the Defendant will pay the Cash Benefit.  However, the Rider fails to specify when or how soon the Defendant will investigate and make its decision regarding coverage, once the request is made and the Waiting Period has ended.  In the absence of a contract term indicating the appropriate time period, the Court construes this provision as

---

[2] Because the Plaintiff failed to make a jury demand, the Court ultimately will serve as the fact-finder in this case.

requiring that the Defendant investigate and make a decision regarding coverage within a reasonable time following the end of the Waiting Period.

However, neither party provides sufficient facts for the Court to determine that the time that lapsed between the end of the Waiting Period and when Defendant began and concluded its investigation was reasonable. Rather, the parties merely state that the Waiting Period ended on March 5, 2009 and that Defendant failed to have a medical evaluation of Plaintiff performed on that date. In fact, Defendant waited more than two months after the end of the Waiting Period before it contacted Plaintiff's doctor, Dr. Voy, informing him that Defendant needed Plaintiff's medical records to "sen[d] to an independent medical consultant for review." (Pl.'s Mot. Summ. J., 61, Ex. 5, ECF No. 27.) Thereafter, on June 23, 2009, Defendant notified Plaintiff's guardian that coverage was denied. (*Id.*, Ex. 7.) This notification was sent more than nine months after Plaintiff's injury and two and a half months after the end of the Waiting Period.

These undisputed facts are insufficient to allow the court to summarily determine whether this time lapse was reasonable. For example, the parties fail to provide examples of past claims made under this provision to establish the average or usual time lapse reasonably occurring after the end of the Waiting Period but before Defendant's final decision regarding coverage. Thus, given the current facts in the record, the Court is unable to decide whether the time lapse in this case was reasonable. Accordingly, questions of fact remain unresolved and preclude summary judgment.

> **3. The Rider is ambiguous because it fails to specify the manner in which Defendant will make its determination.**

With respect to how it is to be determined as to whether the injured individual does or does not qualify for the Cash Benefit, the Rider simply provides that the paralysis "must be determined by a Physician to be permanent and irreversible at the end of th[e] Waiting Period and must result in Disability." (Pl.'s Mot. Summ. J., 49, Ex. 2, ECF No. 27.) Unfortunately, the

Rider fails to specify who makes the determination that the injured individual is paralyzed and fails to specify how that determination must be made.  It is possible to interpret this clause to mean that this determination is made by an expert of Defendant's choosing.  On the other hand, it is equally possible that the Rider requires this determination to be made by a Physician, as the term is defined in the insurance contract.  This ambiguity introduces further questions of fact that are currently unresolved and, thus, preclude summary judgment.

If the Rider expressly stated that the determination that an injured individual is paralyzed is to be made by an expert retained by Defendant, then Defendant would be correct to rely upon the recommendation of its expert, Dr. Topper.

However, if such a determination must be made by a "Physician," the outcome would be quite different.  The Insurance Policy defines "Physician" as "a licensed practitioner of the healing arts acting within the scope of his or her license who is not 1) the Insured; 2) an Immediate Family Member; or 3) retained by the Policyholder." (*Id.* at 23, Ex.1.)  Under this definition, Dr. Voy qualifies as a Physician that may permissibly make the determination that the injured individual's paralysis is permanent and irreversible.  Dr. Voy is not the insured; he is not a member of Plaintiff's immediate family; and he was not retained by Defendant.[3]  Thus, under this equally plausible interpretation, Dr. Voy's determination that Plaintiff's paralysis was permanent and irreversible would seem to satisfy the prerequisite required by the Rider to receiving the cash benefit.

Moreover, as Defendants effectively admit, Dr. Topper does not qualify as a Physician, as this term is defined in the insurance contract.  Specifically, Defendant recognizes that "the determination may not be made by a physician retained by the Company (National Union)." (*Id.* at 15:5-6.)  Additionally, Defendant expressly states that *Defendant* arranged to have

---

[3] Defendant expressly recognizes that it is the policyholder and thus, the determination whether the Paralysis is permanent and irreversible may not be made by a physician retained by Defendant. (Def.'s Resp. 15:5-6, ECF No. 33.)

Plaintiff's records reviewed by Dr. Topper.  This same logic applies to Defendant's retained expert, Dr. Kaplan.  Because these doctors do not qualify as Physicians, under this interpretation of the Rider, their opinions are not dispositive.  This could result in a "battle of experts," and, based on the few facts and exhibits included with the parties' summary judgment motions, the Court is unable to make a determination about which expert's opinion should prevail.

For these reasons, the Court is unable to determine which interpretation of this ambiguity is correct based on the undisputed facts provided in the parties' motions.  Rather than argue factual disputes and offer alternative interpretations of the relevant provisions, the parties could have easily provided an industry standard or Defendant's custom with respect to past claims under this Rider.  Because the Court is the fact finder in this case, this type of objective data would assist the Court in resolving the questions of fact left open by this contractual ambiguity.

Due to these remaining questions of fact, Plaintiff's motion for partial summary judgment is DENIED.  Likewise, Defendant's motion for summary judgment on Plaintiff's breach of contract claim is also DENIED.

**B.    Unfair Claims Practices Act – Nevada Revised Statute 686A.310**

The Nevada Unfair Practices Act (the "Act") proscribes specific actions taken by an insurer that Nevada has deemed to be unfair, regardless of whether insurance benefits are denied. NRS 686A.310(1)(a)-(p); *see Hart v. Prudential Property & Cas. Ins. Co.,* 848 F. Supp. 900, 904 (D. Nev. 1994).  Because Plaintiff will bear the burden of proving that Defendant violated one or more subparagraphs of the Act, Defendant need only establish that Plaintiff has failed to "make a showing sufficient to establish" violations of the subparagraphs. *See Celotex Corp.*, 477 U.S. at 323-24.

In his complaint, instead of specifically enumerating which subparagraphs Defendant

allegedly violated, Plaintiff alleges that "Defendant's actions were in violation of provisions of" the Act.  In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff more explicitly provides which subparagraphs Defendant allegedly violated.

Upon review, the Court finds that issues of material fact remain regarding Plaintiff's claims under Nevada Revised Statute 686A.310(b)-(d).  Accordingly, Defendant's Motion for Summary Judgment regarding Plaintiff's second cause of action for Unfair Claims Practices is DENIED for the following reasons.

First, the Court is persuaded by Plaintiff's argument that the evidence of possible bias by the cursory review completed by Dr. Topper, Defendant's neurological analyst, results in material questions of fact that are not yet capable of resolution.  Although Plaintiff relies on non-binding authority, the Court agrees with the Northern District of California's persuasive reasoning that an insurance provider's act in conducting a "pure paper" review, rather than an independent medical examination, constitutes "an indicator of bias." *Nolan v. Heald Coll.*, 745 F. Supp. 2d 916, 933 (N.D. Cal. 2010).  Plaintiff's bias allegation is further supported by the evidence that, as reported by Lexis Nexis, Dr. Topper has acted as an expert in fifteen cases and was retained by the insurance company in every single case.[4] *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1011 (9th Cir. 2004) (noting that a fact-finder could reasonably conclude that an expert has lost his independence when that expert has represented an insurance company on a continual basis).  Additionally, Dr. Topper spent less than forty-five minutes analyzing Plaintiff's records before making his recommendation. (*See* Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 13, ECF No. 42-13.).

Second, Defendant relies upon Plaintiff's failure to take certain depositions and argues

---

[4] Moreover, Dr. Topper worked as a medical expert through a company called "Genex."  (Pl.'s Resp. to Def.'s Mot. Summ. J. Ex. 13, ECF No. 42-13.)  According to Plaintiff, Genex is "an organization with a business model of conducting medical assessments for insurers." (Pl.'s Resp. to Def.'s Mot. Summ. J. 29:9-11, ECF No. 42.) Defendant neither affirms nor disputes this assertion.

that this failure precludes Plaintiff from producing the required evidence to go forward with this case.  However, the discovery period has not yet ended in this case; discovery closes on October 26, 2012. (*See* Order Grant'g Stip. To Extend Deadlines, ECF No. 74.)  Thus, even to the extent that Plaintiff currently lacks the requisite evidence, the time has not passed for Plaintiff to acquire such evidence.

Finally, Defendant's bare assertion that it responded promptly to Plaintiff's request for the Cash Benefit is insufficient warrant summary adjudication.  Questions of material fact remain with respect to whether Defendant's investigated and responded within a reasonable time of the end of the Waiting Period.

For these reasons, existing questions of material fact preclude summary judgment on Plaintiff's second cause of action for Unfair Claims Practices.  Thus, Defendant's Motion for Summary Judgment on this ground is DENIED.

### C.   Breach of Implied Covenant of Good Faith

Although the question of good faith is generally a question of fact, *A.C. Shaw Const., Inc. v. Washoe Cnty*, 784 P.2d 9, 11 (Nev. 1989), the application of the "genuine dispute doctrine" requires that the Court GRANT Defendant's Motion for Summary Judgment on Plaintiff's third cause of action, breach of the implied covenant of good faith.  Specifically, the genuine dispute doctrine recognizes that a "bad faith claim should be dismissed on summary judgment 'if the defendant demonstrates that there was a genuine dispute as to coverage.'" *Tracey v. Am. Family Mut. Ins. Co.*, No. 2:09-cv-01257-GMN-PAL, 2010 WL 3613875, at *2 (D. Nev. Sept. 8, 2010) (citing *Feldman v. Allstate Ins. Co.*, 322 F.3d 660 (9th Cir. 2003)). Even to the extent that the Court, as the fact-finder, may later determine that the Defendant's denial of the Cash Benefit was incorrect, the Court concludes that Defendant's denial was, at least, reasonable in light of the facts and circumstances of this particular claim and the injury incurred.  Namely, as discussed above in Section IV.A, the Court recognizes that the

Defendant's interpretation of the Rider was one of the two equally reasonable interpretations. Because Defendant's interpretation of the Rider was reasonable, its denial of the Cash Benefit pursuant to that interpretation was also reasonable. Therefore, the Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's cause of action for Breach of the Covenant of Good Faith and Fair Dealing.

### D.   Negligence

Under Nevada law, a claim for negligence requires that a plaintiff satisfy four elements: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) that breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages. *Wiley v. Redd*, 110 Nev. 1310, 1315, 885 P.2d 592, 596 (1994). Because the question of whether a defendant owes the plaintiff a duty of care is a question of law, summary adjudication on this element is often appropriate. *Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 798 (Nev. 2009). Here, Defendant argues that summary adjudication is appropriate because Defendant does not owe a duty of care beyond the duties imposed by the insurance contract and the corresponding duty of good faith, discussed above in Section IV.C. The Court agrees. Thus, for the reasons discussed below, the Court GRANTS the Defendant's Motion for Summary Judgment with respect to Plaintiff's fourth cause of action for negligence.

In Plaintiff's brief opposing Defendant's Motion for Summary Judgment, Plaintiff fails to cite to any Nevada case law that imposes a duty of care on insurance providers arising from an insurance contract. Rather, Nevada law recognizes that "an insurer's obligations arise from the insurance contract and the law." *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 330 (Nev. 2009); *see also Williams v. Univ. Med. Ctr. of So. Nev.*, 688 F. Supp. 2d 1134, 1145 (D. Nev. 2010) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) (stating that "[b]ecause negligence is a tort, the breach must be a violation of a duty imposed by law independent of a breach of a contractual duty"). Plaintiff's complaint merely states that "Defendant[] breached

[its] duty to Plaintiff . . ..'' (Compl. ¶ 30, ECF No. 1-2.)  Additionally, Plaintiff's brief opposing Defendant's Motion for Summary Judgment attempts to establish that "an insurance company has a 'fiduciary-like' duty to its insured." (Pl.'s Resp. to Def.'s Mot. Summ. J. 23:20-21, ECF No. 42.)  In both of these filings, Plaintiff fails to identify the legal source of this duty.  By categorizing this duty as "fiduciary-like," Plaintiff appears to be bootstrapping a breach of fiduciary duty claim into his negligence claim.  However, a breach of fiduciary duty claim is distinct from a negligence claim and Plaintiff's complaint makes no mention of a breach of fiduciary duty claim.

Because Defendant owed no duty of care to Plaintiff, outside the duties imposed by the insurance contract and the duty of good faith, Defendant's Motion for Summary Judgment on Plaintiff's fourth cause of action, negligence, is GRANTED.

### E.    Unconscionability

The Court previously dismissed Plaintiff's unconscionability cause of action against a previous Defendant, the Clark County School District. *See Phillips v. Clark Cnty School Dist.*, 2:10-cv-02068-GMN-PAL, 2011 WL 4343979, at *5 (D. Nev. Sept. 14, 2011).  In respect to that other defendant, the Court specifically stated that, "[t]here is no evidence that Plaintiff's decision to play football was influenced by the existence or terms of the insurance policy. Therefore, Plaintiff has failed to state a claim for unconscionability." *Id.*  Plaintiff has cited no reason that this reasoning should not also apply to Defendant National Union.

Indeed, the undisputed facts of the case clearly support the Court's earlier reasoning. (*See Pl.'s Dep.*10:17-11:8.)  Specifically, when asked whether he was aware that "the School District had purchased any sort of additional insurance for [his] protection," Plaintiff responded "No."  (*Id.* at 10:17-20.)  Moreover, Plaintiff acknowledged that he did not become aware of the "catastrophic insurance policy" until "at least a month" *after the injury*.  (*Id.* at 10:21-11:8.) Accordingly, there is no dispute that Plaintiff's decision to play football for Green Valley High

School was not based on the subject insurance contract.  Therefore, the Defendant's Motion for Summary Judgment regarding Plaintiff's fifth cause of action, "Unscionability" [sic], is GRANTED.

**F.  Punitive Damages**

Nevada law authorizes an award of punitive damages "for the breach of an obligation not arising from contract, where . . . the defendant has been guilty of oppression, fraud or malice . . .." NRS 42.005(1).  Because Plaintiff's second cause of action, pursuant to the Nevada Unfair Claims Practices Act, survives this Motion for Summary Judgment, Plaintiff's claim for punitive damages will survive only if Plaintiff can provide sufficient evidence to establish that he will be able to prove at trial, *by clear and convincing evidence*, that Defendant is "guilty of oppression, fraud or malice . . .." NRS 42.005(1); *see also Celotex*, 477 U.S. at 323-24 (holding that, a party cannot survive a motion for summary judgment when it "fail[s] to make a showing sufficient to establish an element essential to that party's case on which the party will bear the burden of proof at trial").

To establish that Defendant is guilty of "oppression," Plaintiff must show that Defendant acted with "a conscious disregard for the rights of others which constituted an act of subjecting [P]laintiff[] to cruel and unjust hardship." *Ainsworth v. Combined Ins. Co. of Am.*, 763 P.2d 673, 675 (Nev. 1988) (citations omitted).  "[M]alice" requires a showing of "hatred and ill-will" or of Defendant's motive to "vex, harass, annoy, or injure." *Craigo v. Circus-Circus Enter.*, 786 P.2d 22, 23 (Nev. 1990).

Plaintiff has failed to demonstrate sufficient evidence showing that he may be able to prove at trial, by clear and convincing evidence, that he is entitled to punitive damages. Because the Court grants Defendant's Motion for Summary Judgment on Plaintiff's breach of the implied covenant of good faith, negligence, and unconscionability claims, Plaintiff cannot rely on these allegations to establish that he is entitled to punitive damages. *See* Sections IV.C-

E.  Instead, Plaintiff attempts to satisfy his burden by pointing to Defendant's "improper and unreasonable handling" of Plaintiff's claim. (Pl.'s Resp. to Def.'s Mot. Summ. J. 29:6, ECF No. 42.)

Plaintiff further alleges that "Defendant displayed a tendency to look for ways of avoiding coverage rather than looking for coverage." (*Id.* at 29:20-21 (citing Expert Report of Prof. Stempel, Ex. 16, ¶ 126).)  However, none of these allegations rise to the level of "oppression" or "malice."  Plaintiff has failed to provide evidence of evil motive, intent to injure, or even reckless disregard for Plaintiff's rights.  The Court's conclusion is further supported by the Court's earlier finding that Defendant's conduct in denying Plaintiff's claim was reasonable. *See* Section IV.C.  Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's sixth cause of action for Punitive Damages, is GRANTED.

## V.   CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **DENIED in part** and **GRANTED in part**.  With respect to Plaintiff's first and second causes of action for breach of contract and unfair claims practices, Defendant's Motion for Summary Judgment is **DENIED**.  With respect to Plaintiff's third through sixth causes of action for breach of the implied covenant of good faith, negligence, unconscionability, and punitive damages, Defendant's Motion for Summary Judgment is **GRANTED**.

**DATED** this 30th day of September, 2012.

Gloria M. Navarro
United States District Judge